SDD:SK/TAD/JMH
F.#2011R00298

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -                                 Criminal Docket No. 17-449 (NGG)

MIRSAD KANDIC,

              Defendant.

- - - - - - - - - - - - - - - - -X

## THE GOVERNMENT'S DETENTION MEMORANDUM

                                                          BRIDGET M. ROHDE
                                                          Acting United States Attorney
                                                          Eastern District of New York

Saritha Komatireddy
Tiana A. Demas
J. Matthew Haggans
Assistant U.S. Attorneys
(Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ........................................................................................................... 2

I.      ISIS ........................................................................................................................ 2

II.     The Defendant Embraced and Promoted ISIS's Violent Ideology
and Enlisted Others to Follow That Ideology .................................................... 5

III.    The Defendant Recruited Extremists from Around the World to Serve
as Foreign Fighters in ISIS-Controlled Territories ............................................ 6

IV.    The Defendant's Arrest and Extradition ........................................................... 8

ARGUMENT .................................................................................................................................. 9

I.      Legal Principles .................................................................................................. 9

II.     The Defendant is an Extreme Danger to the Community ............................. 10

III.    The Defendant is a Significant Flight Risk ..................................................... 11

CONCLUSION ............................................................................................................................ 13

## PRELIMINARY STATEMENT

The defendant, Mirsad Kandic, has been charged by indictment with six federal terrorism offenses, two of which carry statutory maximum sentences of life imprisonment. The charged offenses arise from the defendant conspiring to provide and providing a wide range of material support and resources to the Islamic State of Iraq and al-Sham ("ISIS") for a period of more than three years, from approximately 2013 to 2017. On October 31, 2017, the defendant was extradited to the United States from Bosnia and Herzegovina ("Bosnia"). For the reasons set forth herein, there are no conditions or combination of conditions that would reasonably safeguard the community or prevent the defendant from fleeing this prosecution. The Court should enter a permanent order of detention pending trial.

STATEMENT OF FACTS

The defendant is charged with six felony terrorism offenses, each arising from his provision of material support to ISIS. See generally Indictment, ECF No. 4. Two of the charged offenses carry a statutory maximum sentence of life imprisonment; the remaining offenses carry a statutory maximum sentence of 20 years' imprisonment. See 18 U.S.C. § 2339B(a)(1).

I.     ISIS

ISIS is a violent terrorist organization that has existed, in various iterations, since approximately 2004, when it was known as Jam'at al Tawhid wa'al-Jahid or al-Qa'ida in Iraq. Since 2013, ISIS supporters have claimed credit for numerous terrorist activities, including multiple attacks against Americans in the United States and against Westerners abroad, and have publicly expressed a desire to continue to target and attack the U.S. and the West.[1] ISIS supporters have claimed responsibility for recent attacks in the United States, including: the May 2015 shooting in Garland, Texas, at an exhibition featuring cartoons of the Prophet Mohammed; the December 2015 shooting in San Bernardino, California, at the

---

[1] See, e.g., Rukmini Callimachi, Before Killing James Foley, ISIS Demanded Ransom from U.S., New York Times, Aug. 20, 2014, https://www.nytimes.com/2014/08/21/world/middleeast/isis-pressed-for-ransom-before-killing-james-foley.html; Mark Lander and Eric Schmitt, ISIS Says It Killed Steven Sotloff After U.S. Strikes in Northern Iraq, New York Times, Sept. 2, 2014, https://www.nytimes.com/2014/09/03/world/middleeast/steven-sotloff-isis-execution.html; Rukmini Callimachi, Obama Calls Islamic State's Killing of Peter Kassig "Pure Evil", New York Times, Nov. 16, 2014, https://www.nytimes.com/2014/11/17/world/middleeast/peter-kassig-isis-video-execution.html; Daniel Costa-Roberts, ISIS Publishes Online Hit List of US Service Members, PBS News Hour, Mar. 22, 2015, https://www.pbs.org/newshour/world/isis-publishes-online-hit-list-us-service-members.

2

Inland Regional Center; and the June 2016 shooting in Orlando, Florida, at the Pulse nightclub.² ISIS supporters have also claimed responsibility for recent attacks in Europe, including: the November 2015 shootings and suicide bombings in Paris, France, at the Bataclan concert hall, a sports stadium, and several restaurants; the July 2016 truck attack in Nice, France during Bastille Day celebrations; the December 2016 truck attack in Berlin, Germany at a Christmas market; the May 2017 suicide bombing in Manchester, United Kingdom at a concert; and the August 2017 van attack in Barcelona, Spain.³

      ISIS has released multiple audio and video messages purporting to be from its self-proclaimed leader, Abu Bakr al-Baghdadi, advocating continued violence by ISIS supporters. On June 29, 2014, ISIS released an audio recording declaring a "caliphate" consisting of territory under ISIS control in Iraq and Syria, and stating that Baghdadi would

---

² See, e.g., Catherine Shoichet, et al, Garland, Texas, shooting suspect linked himself to ISIS in tweets, CNN, May 4, 2015, ttp://www.cnn.com/2015/05/04/us/garland-mohammed-drawing-contest-shooting/index.html; Faith Karimi, et al, San Bernardino shooters 'supporters' of ISIS, terror group says, CNN Dec. 5, 2015, http://www.cnn.com/2015/12/05/us/san-bernardino-shooting/index.html; Ashley Fantz, et al, Orlando shooting: 49 killed, shooter pledged ISIS allegiance, CNN, June 13, 2016, http://www.cnn.com/2016/06/12/us/orlando-nightclub-shooting/index.html.

³ See, e.g., Mariano Castillo, et al, Paris suicide bomber identified; ISIS claims responsibility for 129 dead, Nov. 16, 2015, http://www.cnn.com/2015/11/14/world/paris-attacks/index.html; Alissa J. Rubin, et al, ISIS Claims Truck Attacker in France Was Its 'Soldier', New York Times, July 16, 2016, https://www.nytimes.com/2016/07/17/world/europe/isis-nice-france-attack.html; Frederik Pleitgen, et al, Berlin attack: ISIS claims it inspired truck assault at market, CNN, Dec. 20, 2016, http://www.cnn.com/2016/12/20/europe/berlin-christmas-market-truck/index.html; Katrin Bennhold, et al, Terror Alert in Britain Is Raised to Maximum as ISIS Claims Manchester Attack, May 23, 2017, https://www.nytimes.com/2017/05/23/world/europe/manchester-arena-attack-ariana-grande.html; Elwyn Lopez, et al, ISIS praises Barcelona terrorists, threatens more attacks in Spain, CNN, Aug. 23, 2017, http://www.cnn.com/2017/08/23/europe/barcelona-attack-isis/index.html.

be the "caliph" or "leader for Muslims everywhere."[4] On July 5, 2014, ISIS released a video recording in which Baghdadi urged Muslims from across the world to "do jihad in the cause of God, incite the believers and be patient in the face of this hardship."[5] On May 14, 2015, ISIS released an audio recording in which Baghdadi urged Muslims to take up arms on behalf of ISIS by either traveling to the Middle East to fight for ISIS or launching attacks wherever they were.[6] More recently, on September 29, 2017, ISIS released an audio recording in which Baghdadi again urged his followers to continue to attack the U.S. and its allies, saying: "Carry on your jihad and your blessed operations. Let not the crusaders enjoy life in their homelands while your brothers are subjected to bombardment and destruction."[7] These activities are part of ISIS's broader goal of forming an Islamic state or "caliphate" in Iraq and Syria.

At various times over the past few years, ISIS has controlled territory in Syria, Iraq, and Libya. ISIS supporters also maintain a presence in other countries, including Turkey and Bosnia. ISIS is a designated Foreign Terrorist Organization.

---

[4] Sunni rebels declare new 'Islamic caliphate', Al Jazeera, June 30, 2014, http://www.aljazeera.com/news/middleeast/2014/06/isil-declares-new-islamic-caliphate-201462917326669749.html.

[5] Alissa J. Rubin, Militant Leader in Rare Appearance in Iraq, New York Times, July 5, 2014, http://www.nytimes.com/2014/07/06/world/asia/iraq-abu-bakr-al-baghdadi-sermon-video.html.

[6] ISIL releases 'audio of Baghdadi' issuing call to arms, Al Jazeera, May 15, 2015, http://www.aljazeera.com/news/2015/05/isil-releases-audio-baghdadi-issuing-call-arms-150514225906126.html.

[7] See, e.g., Brian Todd, ISIS leader seemingly breaks silence, CNN, Sept. 29, 2017, http://www.cnn.com/videos/world/2017/09/29/abu-bakr-al-baghdadi-message-todd-dnt-tsr.cnn.

II. The Defendant Embraced and Promoted ISIS's Violent Ideology and Enlisted Others to Follow That Ideology

The defendant is a legal permanent resident of the United States and a former resident of the Bronx and Brooklyn, New York. Beginning in approximately 2005, the defendant expressed his desire to travel to Pakistan, Afghanistan and locations in the Middle East to engage in jihad against U.S. military forces and to seek his own martyrdom. By late 2013, the defendant began trying to realize those objectives. Despite having been placed on the no-fly list, by December 2013, the defendant succeeded in departing the United States. Taking a circuitous route, the defendant arrived in Turkey and joined ISIS.

The defendant then "worked in [the] media department" of ISIS, as he later told an associate. The defendant operated numerous Twitter accounts to disseminate ISIS propaganda, solicit individuals in the United States and elsewhere to take action in support of ISIS and promote attacks against the West.[8] For example, hours after the November 2015 shootings and suicide bombings in Paris, France, the defendant posted a Twitter message stating: "America in fear.! The NYPD have said they will have more officers on the streets in response to the terrorist attacks in Paris this evening." On December 27, 2015, the defendant used one of his Twitter accounts to promote the May 2015 shooting in Garland, Texas, at an exhibition featuring cartoons of the Prophet Mohammed, posting: "City of #garland in Texas, USA, where they insulted the Prophet of Islam last year. May they perish and suffer more:[.]"

---

[8] One of these accounts bore the screen name "Islamic State Media" and garnered more than 10,000 followers.

5

III.  The Defendant Recruited Extremists from Around the World to Serve as Foreign Fighters in ISIS-Controlled Territories

The defendant worked as an ISIS recruiter and travel facilitator, principally by assisting non-Syrian or Iraqi individuals, known as "foreign fighters," to travel to the Middle East to join ISIS. The defendant provided many of these services via Twitter. During the course of the government's investigation, over 100 Twitter accounts have been identified as belonging to the defendant. The defendant used these Twitter accounts to send messages to his many followers and to advance ISIS's objectives.

For example, in August 2014, the defendant assisted an Australian foreign fighter, Jake Bilardi ("Bilardi"), to travel from Melbourne, Australia to Istanbul, Turkey, and onward into ISIS-controlled territory in Syria and Iraq. Through Twitter messages, the defendant gave Bilardi instructions on what to do when Bilardi arrived in Turkey and advice about items he would not be able to bring with him into ISIS-controlled territory. Bilardi then flew from Melbourne, Australia, to Istanbul, Turkey, arriving on August 26, 2014. The defendant continued his contact with Bilardi in the ensuing months as Bilardi fought on behalf of ISIS in Iraq. The defendant encouraged Bilardi to commit violent attacks including suicide attacks. In December 2014, when Bilardi informed the defendant that he intended to become an "istishhadi" — a suicide bomber — the defendant supported the mission, stating: "May Allah strengthen you . . . Level these kufar [non-believers] with the ground in shaAllah."[9] Later that month, the defendant re-emphasized to Bilardi that the "kufars" [non-believers] should experience "a shock wave if the bullets and shrapnells [*sic*] can't reach

---

[9] In shaAllah or inshaAllah means "God willing."

6

them So there [sic] lungs and heart's [sic] implode . . . And tell a brother to inform me in case you become immortal[.]"

In March 2015, the defendant and Bilardi resumed their correspondence via Twitter; on March 6, 2015, the defendant asked Bilardi, "how do you feel about your mission," and supported Bilardi committing a suicide attack, stating: "May Allah make there [sic] inner organs implode." Later that same day, Bilardi responded that he anticipated that his mission would take place in "2-3 days." The defendant responded with a smiley-face emoticon and continued, "May Allah a except [accept] it from you," to which Bilardi replied "Ameen [Amen]." A few days later, on March 11, 2015, Bilardi carried out a suicide truck bombing in the vicinity of Ramadi, Iraq. Later that same day, via Twitter, the defendant praised the attack: "Australian citizen Jake Bilardi aka Abu Abdullah carried the martyrdom operation in #Ramadi, #Iraq[.] . . . Ask about Abu Abdullah Australi ( #JakeBilardi )they will tell you he was a sound brother, Took part in many battl[es]."

The defendant also provided travel information and instructions to many other individuals via Twitter and used Twitter to inform associates about his travels to and from ISIS-controlled territory, including Raqqa, Syria.[10] In a recorded voice memo from the defendant to an associate, the defendant stated, "I have a lot of Mujahideen in Europe, a lot," and "I sent out over 20,000 brothers . . . to Sham." "Mujahideen" refers to fighters, and "Sham" is frequently used by ISIS members to refer to the region of the Levant, which includes Syria. The defendant also worked to further ISIS's media and propaganda

---

[10] During the relevant time period, ISIS claimed that Raqqa served as its capital or headquarters.

7

operations, provided false documentation and identification to ISIS recruits, and obtained property and equipment useful for ISIS's activities.

Between 2013 and 2017, the defendant took one or more trips into Syria (including to Raqqa, then the purported capital of ISIS). In January 2017, the defendant relocated to Bosnia. During that time period, the defendant had access to multiple credit or debit cards in the names of other individuals, as well as false identity documents.

IV.    The Defendant's Arrest and Extradition

On or about June 30, 2017, Bosnian authorities arrested the defendant in Sarajevo. At the time of his arrest, the defendant possessed false identification documents.

On August 17, 2017, a grand jury in the Eastern District of New York returned an indictment charging the defendant with six violations of 18 U.S.C. § 2339B(a)(1), for conspiring to provide, providing, and attempting to provide material support and resources to ISIS. Counts One and Five carry a statutory maximum of life imprisonment; the remaining counts carry a statutory maximum of 20 years' imprisonment.

Following extradition proceedings initiated based on the Indictment, the defendant arrived in the Eastern District of New York on October 31, 2017, and will be presented before the Honorable Ramon E. Reyes, Jr. for arraignment on November 1, 2017.

ARGUMENT

I.  Legal Principles

Federal law requires that a defendant must be detained pending trial if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).  A finding of dangerousness must be supported by clear and convincing evidence; a finding of risk of flight must be supported by a preponderance of the evidence.  See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

Courts consider several factors in making the determination of whether detention is appropriate: (i) the nature and circumstances of the offense charged, including specifically whether the offense is a federal crime of terrorism; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including family ties, employment, community ties, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual.  See 18 U.S.C. § 3142(g).  In making this determination, the Court is entitled to rely on evidence presented by proffer.  See United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004); United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000).

For certain offenses, including the offenses charged in the Indictment, the law presumes that there is no set of conditions that will reasonably assure the defendant's appearance or the safety of the community.  18 U.S.C. § 3142(e)(3).  This presumption may be rebutted by the defendant, provided the defendant is able to present evidence that he is neither a danger nor a risk of flight.  See United States v. Mercedes, 254 F.3d 433, 436

9

(2d Cir. 2001). Even upon such a showing, however, the presumption in favor of detention "does not disappear entirely, but remains a factor to be considered among those weighed[,]" id., because it "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial" and "represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." United States v. Stone, 608 F3d 939, 945-946 (6th Cir. 2010) (internal quotation marks and citation omitted) (ellipsis in original).

II.     The Defendant is an Extreme Danger to the Community

As set forth above, the law presumes that detention is appropriate based on the offenses charged. Even if there were not such a presumption, the nature and circumstances of the charged offenses — multiple violent terrorism felonies committed overseas in service if ISIS, some of which resulted in death — as well as the strength of the evidence, the history and characteristics of the defendant, and the seriousness of the threat presented by him, see 18 U.S.C. § 3142(g), all support his detention as a danger to the community.

It is self-evident that the defendant poses a danger to the community given that for several years, he has been an active, senior member of ISIS, a violent terrorist organization. The evidence uncovered demonstrates that the defendant has embraced an extremely violent ideology that advocates the committing of violent jihad in the United States and abroad. See United States v. Farah, No. 15-MJ-312(2), 2015 WL 2353075, at *4 (D. Minn. May 15, 2015) (18 U.S.C. § 2339B case) (finding that a defendant poses a risk of harm to the community where he is "charged with attempting to join the most violent terrorist organization, ISIS"); United States v. Salkicevic, No. 15-CR-0060, 2015 WL

10

525556, at *2 (N.D. Ill. Feb. 10, 2015) (18 U.S.C. § 2339A case) (finding that, where a defendant is charged with conspiring to provide material support and resources to ISIS, the charged offense "could scarcely be more serious").

The evidence further demonstrates that, after leaving the United States in 2013 and arriving at his base of operations in Turkey, the defendant worked to bring thousands of foreign fighters to Syria and elsewhere in service of ISIS and in support of the group's brutal goals, including suicide bombings. The government's evidence of this conduct is overwhelming and includes, without limitation: (i) the defendant's own admissions; (ii) photographs and messages from the defendant's Twitter accounts including messages expressly confirming the defendant's membership in ISIS, his presence in Syria and Turkey, and the assistance he provided to foreign fighters; (iii) airline and wire transfer records documenting the defendant's travel to Europe and the Middle East; and (iv) audio files, photographs, text messages and other materials recovered from the defendant's cellular telephone reflecting the defendant's conduct and intentions. Through his support of ISIS, the defendant poses a risk of harm to the United States and to civilians abroad. See Salkicevic, 2015 WL 525556, at *2 (consideration of safety of the community "can, of course, include foreign communities"); see also Farah, 2015 WL 2353075, at *4 (finding dangerousness because there would be harm to the wider community of civilians in the Middle East if the defendant were successful).

III. The Defendant is a Significant Flight Risk

The defendant is also a flight risk as evidenced by his extensive foreign travel and contacts, his longtime residency in Turkey and Bosnia, and his demonstrated ability to circumvent no-fly list restrictions. See Farah, 2015 WL 2353075, at *4 (finding that a

11

defendant poses a risk of flight where part of the offense conduct involves attempting to travel overseas to join a terrorist organization).  Based on travel records, the defendant has taken multiple international trips, and in 2013, he successfully evaded travel restrictions and flew through Mexico, Panama, and Brazil, before arriving in Turkey and joining ISIS.  The defendant is also adept at generating false identification documents, as alleged in the Indictment, and was traveling with false identification documents when he was arrested in Bosnia.

       The defendant also has an extensive network of foreign contacts formed during his multi-year residency in Turkey and subsequent relocation to Bosnia.  The defendant has proficiently maintained that network through social media messaging applications.  For example, the government's investigation has revealed that, when one or more of the defendant's social media accounts were closed by the service provider or otherwise discontinued, the defendant reestablished communications with his contacts via newly-created accounts.

       In contrast to his active buildup of contacts abroad, the defendant severed any meaningful ties he had to this community when he abandoned New York City to join ISIS in the Middle East and further its violent objectives.

       Moreover, the defendant now faces a significant prison term.  If convicted of all charges, he will face a potential sentence of life imprisonment.

CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court order the defendant to be detained permanently pending trial, as there is no condition or combination of conditions that could reasonably assure the safety of the community or the defendant's appearance at trial.

Dated: Brooklyn, New York
      November 1, 2017

                              Respectfully submitted,

                              BRIDGET M. ROHDE
                              Acting United States Attorney

By:    /s/
        Saritha Komatireddy
        Tiana A. Demas
        J. Matthew Haggans
        Assistant U.S. Attorneys
        (718) 254-7000

cc:    Clerk of Court (NGG) (By ECF)
       James M. Branden, Esq. (By Email)