UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X

UNITED STATES OF AMERICA

    – against –

                          Cr. No. 17-449 (NGG)

MIRSAD KANDIC,

      Defendant.

--------------------------------X


**REPLY MEMORANDUM OF LAW IN SUPPORT OF
THE PRETRIAL MOTIONS FOR
MIRSAD KANDIC**


*James M. Branden    Bobbi C. Sternheim*
*551 Fifth Avenue    33 West 19th Street*
*   Suite 422      Fourth Floor*
*New York, NY 10176  New York, NY 10011*
*    212-286-0173  212-243-1100*

*Attorneys for Defendant Mirsad Kandic*

**TABLE OF CONTENTS**

*Page No.*

Table of Authorities. . . . . . . . . . . . . . . . . . . ii

Preliminary Statement . . . . . . . . . . . . . . . . . . 1

REPLY ARGUMENT
    STATEMENTS ALLEGEDLY MADE BY MR. KANDIC
    TO LAW ENFORCEMENT IN 2012 AND 2017
    SHOULD BE SUPPRESSED, OR, ALTERNATIVELY,
    A HEARING SHOULD BE HELD . . . . . . . . . . . . . . 1

    Mr. Kandic's Request for a Hearing. . . . . . . . . 1

    March 27, 2012. . . . . . . . . . . . . . . . . . . 3

    July 18, 2012 . . . . . . . . . . . . . . . . . . . 5

    July 25, 2017 . . . . . . . . . . . . . . . . . . . 7

    July 26, 2017 . . . . . . . . . . . . . . . . . . . 9

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . 10

i

## TABLE OF AUTHORITIES

*Page No.*

Cases

Berkemer v. McCarty,
    468 U.S. 420 (1984). . . . . . . . . . . . . . . . . . 2

Colorado v. Connelly,
    479 U.S. 157 (1986). . . . . . . . . . . . . . . . . . 1

Cruz v. Miller,
    255 F.3d 77 (2d Cir. 2001) . . . . . . . . . . . . . . 4

Easley v. Frey,
    433 F.3d 969 (7th Cir. 2006) . . . . . . . . . . . . . 8

Lego v. Twomey,
    404 U.S. 477 (1972). . . . . . . . . . . . . . . . 1, 2

Miranda v. Arizona,
    384 U.S. 436 (1966). . . . . . . . . . . . 1, 2, 4, 5, 7

Rhode Island v. Innis,
    446 U.S. 291 (1980). . . . . . . . . . . . . . . . . . 8

United States v. Anderson,
    929 F.2d 96 (2d Cir. 1991) . . . . . . . . . . . . . . 2

United States v. Bin Laden,
    132 F.Supp.2d 168 (S.D.N.Y. 2001). . . . . . . . . . . 7

United States v. FNU LNU,
    653 F.3d 144 (2d Cir. 2011). . . . . . . . . . . . . . 4

United States v. Mathurin,
    148 F.3d 68 (2d Cir. 1998) . . . . . . . . . . . . . . 1

United States v. Matlock,
    415 U.S. 1164 (1974) . . . . . . . . . . . . . . . . . 1

United States v. Mitchell,
    966 F.2d 92 (2d Cir. 1992) . . . . . . . . . . . . . . 2

United States v. Szymaniak,
    934 F.2d 434 (2d Cir. 1991). . . . . . . . . . . . . . 8

ii

Cont'd

*Page No.*

<u>United States</u> v. <u>Watson</u>,
    404 F.3d 163 (2d Cir. 2005). . . . . . . . . . . . . . . 1-2

<u>United States</u> v. <u>Yunis</u>,
    859 F.2d 953 (D.C. Cir. 1998). . . . . . . . . . . . . . 7

<u>Yarborough</u> v. <u>Alvarado</u>,
    541 U.S. 652 (2004). . . . . . . . . . . . . . . . . . . 2

Preliminary Statement

Mr. Kandic was indicted on August 17, 2017. At the last conference, a pretrial motion schedule was set, with a return date of October 24, 2019. Pursuant to the schedule, and with some on-consent modifications, Mr. Kandic moved to suppress statements on September 6, 2019, and the government filed opposition on October 16, 2019. Mr. Kandic's Reply is set forth below.

**REPLY ARGUMENT**

STATEMENTS ALLEGEDLY MADE BY MR. KANDIC TO LAW ENFORCEMENT IN 2012 AND 2017 SHOULD BE SUPPRESSED, OR, ALTERNATIVELY, A HEARING SHOULD BE HELD

Mr. Kandic's Request for a Hearing

In Fourth and Fifth Amendment litigation, regardless of which party carries the ultimate burden, the standard of proof is the same: preponderance of the evidence. See United States v. Matlock, 415 U.S. 164 (1974) (re: Fourth Amendment); Lego v. Twomey, 404 U.S.477 (1972) (re: Fifth Amendment). As the party seeking to suppress, Mr. Kandic bears a burden of production. See Colorado v. Connelly, 479 U.S. 157 (1986); United States v. Mathurin, 148 F.3d 68, 69 (2d Cir. 1998) (re: Fifth Amendment).

Mr. Kandic has satisfied that burden by alleging custodial interrogation in the absence of Miranda warnings, relying on fairly detailed 302 reports. See id. See, also, United States v. Watson,

1

404 F.3d 163, 167 (2d Cir. 2005) (evidentiary hearing to suppress required "if the moving papers are sufficiently definite, specific, detailed and nonconjectural to enable the court to conclude that contested issues of fact [exist]") (emphasis added). Thus, the burden shifted to the government to prove Miranda voluntariness, either because there was no custodial interrogation implicating Miranda, or, as not relevant here, there was an applicable exception to the Miranda rule or Mr. Kandic was properly Mirandized and waived his rights. See, Lego, supra, 404 U.S. at 489; United States v. Anderson, 929 F.2d 96, 98 (2d Cir. 1991).

As set forth in its opposition to Mr. Kandic's motion to suppress statements made on four different dates, the government argued that there was no custodial interrogation because, on those dates, Mr. Kandic was not in custody, that is, he was free to leave. See United States v. Mitchell, 966 F.2d 92, 98 (2d Cir. 1992).[1] The "free to leave" test is an objective one. Berkemer v. McCarty, 468 U.S. 420, 442 (1984). Because the test is objective, it does not focus on the subject himself, Mr. Kandic, but rather on how a person in his place would perceive his circumstances. Yarborough v. Alvarado, 541 U.S. 652, 662 (2004).

As such, it is now the government's burden to prove lack of custody and no affidavit or declaration from Mr. Kandic is

---

[1]

As to the July 25, 2017 statements, the government also argued that the agents did not interrogate Mr. Kandic.

2

necessary to warrant a hearing because his subjective view on the matter is irrelevant.  Further, in order to meet its burden, the government will likely need to call the interrogating agents who can speak to the surrounding circumstances.  Their testimony may fill some gaps from the 302s as to the relevant "in custody" factors, including but not limited to, the duration of the 2012 interrogations, the tone used by the agents, and whether the agents were armed or brandished their firearms.  As to July 2017, it may also be necessary to know the circumstances leading up to the meetings, such as who initiated them, Mr. Kandic or the government.

***

Mr. Kandic moved to suppress statements given to law enforcement on four different dates based on the relevant 302s. While the 302s do not provide all the necessary background, the parties have marshaled the facts provided, and, in reply, Mr. Kandic again addresses the dates chronologically.

<u>March 27, 2012</u>

Arguing that Mr. Kandic was not in custody, the government relied almost exclusively on the fact that the interrogation took place "in public" and was, in essence, benign.  Gov't Opp. at 17. In the later regard, it downgraded the interrogation to a "typical intelligence collection conversation."  In this clipped fashion, the government largely ignored the other relevant factors of the custodial analysis and sought to trivialize the meeting itself.

3

In <u>Cruz</u> v. <u>Miller</u>, 255 F.3d 77, 84 (2d Cir. 2001), the Second Circuit aptly observed that: "Courts endeavoring to determine . . . under what circumstances sidewalk questioning of a suspect not under arrest requires <u>Miranda</u> warnings face an understandably daunting task." Thus, the Circuit has made abundantly clear there is no "in public" exception to the <u>Miranda</u> rule and that district court judges are required to consider carefully all of the relevant factors. <u>See</u>, <u>also</u>, <u>United States</u> v. <u>FNU LNU</u>, 653 F.3d 144, 154 (2d Cir. 2011) (no single factor controls).

Other than location, the factors are: the duration and nature of the interrogation, whether the suspect volunteered for the interview, whether weapons were present and perhaps drawn, and whether the suspect was told he was free to leave or was under suspicion. These factors were addressed at some length in Mr. Kandic's original Memorandum of Law (at 11-13) and need not be fully reiterated here. Suffice it to say, the interrogation was broad in scope and, as directed by the agents, bounced around a multitude of prickly topics. Simply based on the 302 itself (Exhibit 2 to Mr. Kandic's original Memorandum of Law), the interrogation may have lasted in excess of an hour. Plus, the tone of the questioning, even at its inception, was accusatory and showed that Mr. Kandic was, indeed, under suspicion. After introducing themselves, the agents, who it must be presumed were armed, immediately said that they had detected a discrepancy

4

related to his prior military service, which meant that they had combed through his immigration filings. They then asked about his extremist views and association with terrorists.

Mr. Kandic did not volunteer for the questioning, he was, rather, accosted at the train station, suggesting his movements had been surveilled, and twice during the questioning said that he wanted no relationship with law enforcement (which would clearly include continued questioning), but the agents plowed on.

A careful review of all the relevant factors makes clear that Mr. Kandic was in custody for Miranda purposes.

July 18, 2012

The July 2012 interrogation was not "in public." Rather, after Mr. Kandic was advised by a Port Authority Police Officer, presumably gun-toting, that he would not be permitted to fly out of the country, he was "escorted" elsewhere within Terminal 1 of JFK Airport, presumably to a private room, to meet federal agents, also presumably armed, who straight-up accused him of extremism and jihad, and false statements with regard to prior military experience, specifically in Kosovo. He was next told that he had to be truthful in answering the FBI's questions. The ensuing interrogation was lengthy. While the 302 from the March 27, 2012 interrogation covered two full pages and was estimated to memorialize more than one hour of Q and A, the 302 for the JFK

5

interrogation (Exhibit 3 to Mr. Kandic's original Memorandum of Law), was five pages long and can be estimated therefore to have memorialized Q and A that lasted at least two hours. That estimate may well be conservative given that the 302 indicated that the agents presented a series of approximately 20 photographs for his identification, a lumbering process, surely. And, in addition to the accusations of extremism, jihad, and false statements about military experience, the agents delved chiefly into Mr. Kandic's use of and facility with the internet.

Even this short review of available facts compels the conclusion that a reasonable person in Mr. Kandic's place would not have believed himself free to leave the country or the agents. The interrogation was lengthy. It was conducted in a private room. Mr. Kandic did not volunteer for the interrogation but was escorted there by a Port Authority Police Officer. The agents were likely armed and did not inform Mr. Kandic that he was free to leave. Last, the most important factor in border interrogations, that is the nature of the questioning, which was heavy on extremist views, terrorism, jihad and internet proselytizing, made clear that Mr. Kandic had to tough it out.

The government is wrong to suggest that this interrogation and attendant constraints were in keeping with border agents' general duties (see Govt's Opp. at 20-21). At the very least, distinguishing this interrogation from the garden variety were: the

6

revelation that Mr. Kandic was on the no-fly list as a suspected terrorist harboring extremist views; the questioning was conducted in part by an FBI agent, not border security; and, the agents were prepared with and showed Mr. Kandic a photo series of suspected terrorists with whom, they believed, he associated.

For these reasons and those set forth in his original Memorandum of Law, Mr. Kandic was functionally in custody.

<u>July 25, 2017</u>

The Court will recall that Mr. Kandic was arrested and detained in Sarajevo on charges that he violated Bosnia/Herzegovena travel restrictions. During his detention, a criminal complaint commencing the instant prosecution was filed. Thereafter, Mr. Kandic was brought to a prosecutor's office in Sarajevo to be questioned by Joint Terrorism Task Force (JTTF) agents. <u>Miranda</u> warnings were not given and Mr. Kandic made statements.

That Mr. Kandic was in custody is unassailable. It merits noting in reply, simply, that, in its opposition, the government refused to address the cases most on point: <u>United States</u> v. <u>Bin Laden</u>, 132 F.Supp.2d 168, 186 (S.D.N.Y. 2001) and <u>United States</u> v. <u>Yunis</u>, 859 F.2d 953 (D.C. Cir. 1988) (cited in Mr. Kandic's original Memorandum of Law at 10). These cases state unequivocally that <u>Miranda</u> applies to overseas interrogations conducted by U.S. law enforcement, even if the suspect, like Mr. Kandic, is in the physical custody of foreign authorities.

That he was also interrogated is unassailable.  The statements made by the JTTF agents (four in all, plus a Bosnia/Herzegovena prosecutor) were "reasonably likely to elicit an incriminating response" and his cooperation.  <u>See</u> <u>Rhode Island</u> v. <u>Innis</u>, 446 U.S. 291, 300-01 (1980).  The JTTF agents provided Mr. Kandic with a copy of the EDNY criminal complaint.  Once he read it, they added that additional charges would be forthcoming.  They detailed additional evidence supporting the charges, including that they had been to Australia to interview Jake Bilardi's family members and had secured evidence from them, and that they had been in Bosnia investigating him within days following his flight from the United States.  Maintaining the pressure, they told him that they knew he facilitated ISIS recruits and used forged documents, and they were aware of the manner in which ISIS funded him and others.  They were also aware, they said, of his "associates" in Syria, Iraq, Europe, Africa and the United States.  Perhaps most insidious, the agents told him "they know intimate details about him that he has not shared with others."  In short, the agents confronted him with a spate of incriminating information, some of it "intimate," seeking a response, even providing him a piece of paper to write it out, and his cooperation.  <u>See</u> <u>United States</u> v. <u>Szymaniak</u>, 934 F.2d 434, 439 (2d Cir. 1991).  <u>Cf.</u> <u>Easley</u> v. <u>Frey</u>, 433 F.3d 969, 974 (7th Cir. 2006) (officer's "matter of fact" communication of the evidence against defendant not interrogation).  Apart from declarative

8

statements, they asked specific questions about Mr. Kandic's relationship with Jake Bilardi, the suicide bomber at the heart of the most serious charge in the instant indictment.

In its reply, the government did not challenge Mr. Kandic's further argument that warnings provided were insufficient under Miranda.

July 26, 2017

In its reply, the government also did not challenge Mr. Kandic's arguments about the inadmissibility of statements he made on July 26, 2017, noting obliquely that it did not intend to introduce the statements on its case in chief.  For the reasons stated in Mr. Kandic's original Memorandum of Law, the statements should be suppressed for all purposes.

## CONCLUSION

For the reasons stated here and in Mr. Kandic's original Memorandum of Law, statements allegedly made to law enforcement on March 27 and July 18, 2012, and July 25 and 26, 2017 should be suppressed.  In the alternative, a hearing should be held.


                              Respectfully submitted,

                              JAMES M. BRANDEN, ESQ.
                              BOBBI C. STERNHEIM, ESQ.

                                 Attorneys for Defendant
                                 MIRSAD KANDIC

                              By:  _____
                                   JAMES M. BRANDEN
                                   Bar No. JMB 4007

Dated:    New York, New York
          October 22, 2019

10