UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

       -against-

MIRSAD KANDIC,

            Defendant.

MEMORANDUM & ORDER

17-CR-449 (S-1) (NGG) (RER)

NICHOLAS G. GARAUFIS, United States District Judge.

The Government moves *in limine* for an anonymous and partially sequestered jury and for a jury questionnaire. (Mot. in Lim. ("Mot.") (Dkt. 93), Reply in Supp. of Mot. in Lim. ("Reply") (Dkt. 96).) Defendant consents to use of a jury questionnaire but otherwise opposes the Government's motion. (Opp. to Mot. in Lim. ("Opp.") (Dkt. 95).) For the reasons explained below, the Government's motion is GRANTED in part and DENIED in part.

**I.   BACKGROUND**

The court assumes familiarity with the factual and procedural background of this case, and only includes that information to the extent it is necessary to resolve this motion.

Defendant, who was arrested overseas in 2017, was indicted by a grand jury in the Eastern District of New York with six counts of violating 18 U.S.C. § 2339(B)(a)(1), for conspiring to provide, providing, and attempting to provide material support of terrorism. (Indictment (Dkt. 4).) In general, the indictment charges him with supporting the Islamic State of Iraq and al-Sham ("ISIS") as a member of its media operations. Based on those charges, he was extradited to the Eastern District of New York. He has been in detention since his arrest.

The Government seeks to prevent disclosure of venire and petit jurors' names, addresses, and workplaces. (Mot. at 7.) It also asks

for partial sequestration, specifically, that jurors would "be kept together during recesses and taken to or provided lunch as a group each day during trial, and . . . escorted to and from the courthouse each day during trial in a manner to be arranged by the United States Marshals Service." (*Id.*) Defendant opposes these requests. (Opp.)

The Government also moves for the use of a jury questionnaire. (Mot.) Defendant consents, and the parties have been directed to submit a joint proposed jury questionnaire by December 17, 2021. (Opp.; Nov. 16, 2021 Minute Entry.)

## II. APPLICABLE LAW

Every criminal defendant is constitutionally entitled to an impartial jury and to the presumption of innocence. U.S. Const. Amends. V, VI; *Coffin v. United States*, 156 U.S. 432, 453-54 (1895). Special procedures—such as empaneling an anonymous or semi-sequestered jury—invade those rights by suggesting to the jury that the court's general practices for conducting jury trials are inadequate. *See, e.g., United States v. Mostafa*, 7 F. Supp. 3d 334, 336 (S.D.N.Y. 2014). Of these measures, semi-sequestration is particularly damaging: it requires, among other things, that United States Marshals shuttle jurors to and from the courthouse every day, which "remind[s] the jury each day as they arrive and as they leave that th[e] trial requires special handling." *Id.* Accordingly, motions to empanel anonymous or semi-sequestered juries must be closely scrutinized. *See United States v. Thomas*, 757 F.2d 1359, 1365 (2d Cir.) (describing the constitutional implications of empaneling an anonymous jury), *cert. denied*, 474 U.S. 819 (1985); *Mostafa*, 7 F. Supp. 3d at 336 (S.D.N.Y. 2014) (denying motion for anonymous and semi-sequesterd jury in terrorism prosecution). If granted, the court must mitigate the harm to defendants' trial rights with appropriate precautionary measures, *e.g.*, meaningful voir dire and neutralizing jury instructions. *United States v. Wilson*, 493 F.

Supp. 2d 397, 401 (E.D.N.Y. 2006); *see also United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994).

To determine whether special jury procedures are warranted, the court may weigh a number of factors, none of which is dispositive, including:

> (1) the seriousness of the charges; (2) the dangerousness of the defendant; (3) the defendant's ability to interfere with the judicial process by himself or through his associates; (4) previous attempts to interfere with the judicial process by the defendant or his associates; and (5) the amount of public and media attention expected during the trial that might expose the jurors to extraordinary pressures that could impair their ability to be fair.

*United States v. Cacace*, 321 F. Supp. 2d 532, 534 (E.D.N.Y. 2004); *see also United States v. Gotti*, 459 F.3d 296, 345-46 (2d Cir. 2006). When undertaking this analysis, the court may exercise its discretion to grant one form of requested relief and deny the other. *See, e.g., United States v. Spicer*, 2013 WL 5278338, at *3-4 (E.D.N.Y. 2013) (granting request for anonymity but denying request for semi-sequestration).[1]

### III. DISCUSSION

The Government contends that an anonymous, semi-sequestered jury is necessary because of the dangerousness of Defendant; the risk posed to the integrity of the judicial process by Defendant's

---

[1] One factor considered by Judge Johnson in *Spicer* was the high cost of empaneling a semi-sequestered jury. He observed that, for two cases in which that measure was imposed, the jury-related costs exceeded $3 million for each. While not dispositive, the court is mindful of the resources that semi-sequestration demands, which are likely to be further increased by applicable COVID-19 protocols.

3

ties to an international terror organization; and the influence of press and public attention on jury deliberations.

Defendant disagrees. He argues that the nature of the charges against him, alone, does not merit the relief sought by the Government, at the expense of his Fifth and Sixth Amendment rights, particularly because he is not a public safety threat; he lacks associates and the ability to communicate with the outside world; and his prosecution has received scant media attention. Defendant asks that the court deny the Government's motion, or, alternatively, that it empanel an anonymous but non-sequestered jury to minimize harm to his constitutional rights.

### A. The Need for An Anonymous, Partially Sequestered Jury

#### 1. Actual Danger

"A court evaluates a defendant's dangerousness by assessing the seriousness of the crimes charged and whether the defendant is charged with participating in a large-scale criminal enterprise." *United States v. Pugh*, 150 F. Supp. 3d 218, 223 (E.D.N.Y. 2015). "However, the nature of the charges against a defendant does not, *ipso facto*, require [empaneling] an anonymous [or semi-sequestered] jury." *Id.* Nor does the mere fact of a defendant's membership in a terrorist organization or other criminal enterprise. *See United States v. Khan*, 591 F. Supp. 2d 166, 170 (E.D.N.Y. 2008) ("The Second Circuit has cautioned courts to refrain from [empaneling] anonymous [or semi-sequestered] juries simply because the defendant is a member of a criminal organization."); *see also United States v. Vario*, 943 F.2d 236, 241 (2d Cir. 1991) ("The invocation of the words 'organized crime,' 'mob,' or 'Mafia,' unless there is something more, does not warrant an anonymous [or semi-sequestered] jury."); *United States v. Al Fawwaz*, 57 F. Supp. 3d 307, 309 (S.D.N.Y. 2014) ("[T]he

4

mere invocation of the words 'terrorism' or 'al Qaeda' are insufficient alone to justify an anonymous [or semi-sequestered] jury.").

To demonstrate dangerousness, the Government must identify a specific nexus between Defendant and the safety of the jurors in the case at bar. *See Mostafa*, 7 F. Supp. 3d at 338 (rejecting motion for anonymous jury on material support of terrorism charges where the government "failed to present any evidence . . . that this defendant or this case presents a situation in which a jury faces real or threatened violence"); *United States v. Mohammed*, 538 F. Supp. 2d 281, 284 (D.D.C. 2008) (same, where the Government failed to show how instances of terrorism in Afghanistan would pose a potential threat to jurors in the United States).

The Government may carry its burden by offering evidence that Defendant has the means to threaten or harm jurors, directly or indirectly, or has done so in the past. *See Pugh*, 150 F. Supp. 3d at 224 (empaneling anonymous jury in terrorism prosecution based on statements about recent, related violence by news outlets, members of the terrorist organization, and government officials); *Wilson*, 493 F. Supp. 2d at 400 (same, in murder prosecution where defendant had associates at liberty who could harm jurors); *Al Fawwaz*, 57 F. Supp. 3d at 309 (same, where defendants—charged with terrorism counts related to more than 200 deaths and thousands injured—were alleged to have tried to kill informants before).

The Government here relies on the seriousness of the charged crimes as evidence of dangerousness. This argument is unpersuasive. *See Pugh*, 150 F. Supp. 3d at 223. And Defendant identifies several compelling reasons that he is unlikely to present a threat to jurors, including that he is under severely restrictive conditions while in detention; that his calls, which are limited, are monitored by federal agents; and that he lacks associates in the United

States. Thus, the Government has not demonstrated that dangerousness weighs in favor of special procedures.

### 2. Risk to Judicial Integrity

When evaluating the risk to judicial integrity, courts consider (1) the track record, if any, of the defendants (or their associates) of interfering with the judicial process, and (2) whether jurors would reasonably fear retaliation for their involvement in the trial. *See, e.g., United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995); *Thomas*, 757 F.2d at 1364. Accordingly, courts have consistently empaneled anonymous juries in cases involving an obstruction of justice charge against a defendant or co-conspirator. *See Vario*, 943 F.2d at 240 ("An obstruction of justice charge, particularly one involving jury tampering, has always been a crucial factor in our decisions regarding anonymous juries."). And the same conclusion has been reached where, based on defendants' dangerousness, their organized crime connections, and their history of violence, the court found that jurors' impartiality may be affected by a reasonable fear of reprisal. *Thomas*, 757 F.2d at 1364 ("[E]ven a general fear of retaliation could well affect the jury's ability to render a fair and impartial verdict.").

The Government argues that the circumstances of this case, including the charged conduct and Defendant's alleged ISIS ties, is likely to instill a reasonable fear of retaliation in jurors. Defendant disagrees. He asserts that he is not alleged to have personally participated in violent acts; that he has been described to "have a reputation as a coward;" that he has been detained under severely restrictive conditions; that he left the United States in 2013 and remained abroad until he was extradited back in 2017; that he has been detained since his arrest; and that his calls with family in Europe are monitored by federal agents, with "almost no" other contact with the outside world. (Opp. at 4-5.) In sum, he says, the Government's motion should be denied because he has no history of interference with the judicial process and does

not have the ability to do so, either directly or through associates. (*Id.* at 4.)

The court agrees with the Government's argument. Reasonable jurors, when assessing the allegations that Defendant used social media to promote ISIS, could fear that their identities could be disclosed online, exposing them to threats from individuals who are not directly associated with Defendant. And Defendant's position—that he cannot in fact threaten or harm jurors, either directly or indirectly—is inapposite, because it relates to his actual dangerousness, not to the reasonableness of jurors' fear of retribution. Despite Defendant's actual isolation, it would not be unreasonable for jurors to interpret the charged conduct to suggest that Defendant could encourage violence via social media. *See Pugh*, 150 F. Supp. 3d at 224-25 (finding that, because of the reach of social media, "the threat posed by [the Islamic State of Iraq and the Levant ('ISIL')] is not limited by its geographic control, or indeed its members, but instead can extend to sympathetic lone-wolves"). Accordingly, the risk to judicial integrity weighs in favor of special jury procedures.

### 3.   Likelihood of Press and Public Attention

"Pre-trial publicity may militate in favor of an anonymous [or semi-sequestered] jury because it can enhance the possibility that jurors' names would become public and thus expose them to intimidation by defendants' friends or enemies, or harassment by the public." *Vario*, 943 F.2d at 240. The Government may offer evidence to demonstrate that this factor is satisfied by identifying press involvement in or attention to the case, or by showing that its subject matter is likely to appeal to the public interest. *See, e.g.*, *Wilson*, 493 F. Supp. 2d at 398-400 (empaneling anonymous, semi-sequestered jury in death penalty case involving high-profile killings of police officers where the *New York Times*, *New York Post*, and *New York Daily News* had sought access to

7

sealed filings and had published extensive coverage of the case, which indicated that such coverage was likely to continue).

The Government relies on articles published about Defendant in 2017, around the time of his arrest and extradition, along with more recent coverage of other terrorism-related trials and events involving ISIS generally, to argue that pre-trial press attention warrants special jury procedures. (Mot. at 14; Reply at 5-6.) The court disagrees. Coverage of unrelated trials and events, without more, is insufficient to demonstrate a credible likelihood that media attention to this case specifically will increase closer to trial. And, as Defendant points out, the cited media attention to this case is over four years old, and neither Defendant nor the Government (nor the court)[2] has identified more recent coverage. *Cf. Wilson*, 493 F. Supp. 2d at 398 (citing recent media involvement and public salience of the case). Accordingly, the Government has not shown that press and public attention weigh in favor of special jury procedures.

### B. Relief

The first step that the court must take to protect a defendant's constitutional rights is to ensure that the invasion of those rights, if any, is narrowly tailored to the risk presented under the specific facts and circumstances of the case. As explained *supra*, the Government has established a risk to the integrity of the judicial process but not an actual risk of danger or substantial press or public attention. The relief ordered, and precautions imposed, therefore must be specifically designed to reduce the jury's reasonable fear of retaliation.

---

[2] Defendant points out that a Google search for his name does not reveal post-2017 news as of the filing of his opposition in February 2021. (Opp. at 5.) And, from its own research, the court is similarly unaware of any coverage since that date.

Anonymity is adequate to achieve that end. *See, e.g.*, *Al Fawwaz*, 57 F. Supp. 3d at 311. Anonymity protects against disclosure of the jurors' identities, which is the central risk that jurors may reasonably fear in this case. And anonymity may be explained by meaningful voir dire and a neutral instruction to the jury. *See United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994) ("If an anonymous jury is warranted, a defendant's fundamental rights must be protected by the court's conduct of a voir dire designed to uncover bias as to issues in the cases and as to the defendant, and by taking care to give the jurors a plausible and nonprejudicial reason for not disclosing their identities.")

Semi-sequestration, however, is not warranted. Defendant's isolation—including his lack of contacts with individuals in the United States and supervised communications—differentiate this prosecution from those where defendants or their associates, or press or public attention, are capable of threatening jurors' physical safety or their impartiality. *Compare Mostafa*, 7 F. Supp. 3d at 388 (declining to sequester jury for material support of terrorism prosecution because the Government did not show a serious threat to juror safety) *with Pugh*, 150 F. Supp. 3d at 227 (holding that, in material support prosecution, "semi-sequestration is the only way to adequately protect the jury [i]n light of the violent nature of the crimes charged and of ISIL more generally, and the likelihood of significant press attention to this case") and *Khan*, 591 F. Supp. 2d at 170 (semi-sequestering jury based on consistent media coverage and defendant's alleged history of directing associates to harm a cooperator).

It is incontrovertible that semi-sequestration comes at a price, both for the defendant's constitutional rights and for the judiciary's resources. *See Spicer*, 2013 WL 5278338, at *4. It implies a serious element of dangerousness, which undermines the presumption of innocence to which Defendant is entitled, and it should not be imposed if less invasive measures are adequate. *See*

9

*Thomas*, 757 F.2d at 1364; *Mostafa*, 7 F. Supp. 3d at 338 ("[T]he court is [] more concerned with [the requested semi-sequestration] than with the anonymous jury."). As explained in *Mostafa*, semi-sequestration "serve[s] to remind the jury each day as they arrive and as they leave that this trial requires special handling[,] . . . [and] a neutral explanation may not eliminate that ongoing and repeated reminder." 7 F. Supp. 3d at 338.

Under the circumstances of this case, anonymity, coupled with adequate precautions, appropriately balances the need to safeguard the judicial process with the importance of protecting Defendant's rights. Further, the harms of empaneling an anonymous jury are mitigated by the use of meaningful voir dire and a neutral jury instruction that explains that the purpose of empaneling the anonymous jury to maintain their personal privacy and ability to render a fair verdict. *See, e.g.*, *Wilson*, 493 F. Supp. 2d at 401. The Government's request for semi-sequestration is therefore denied.[3]

### IV. CONCLUSION

For the reasons stated above, the Government's motion is GRANTED in part and DENIED in part.[4] As previously advised, the parties are DIRECTED to jointly submit a proposed jury questionnaire by December 17, 2021.

SO ORDERED.

---

[3] If substantial press or public attention develops closer to trial, the Government may request that the court reconsider this decision.

[4] Defense counsel has asked that, if the court empanels an anonymous jury, they receive names of potential jurors. The Government does not object to providing defense counsel and the Government with those names on an attorneys-eyes-only basis. (Gov't Ltr. (Dkt. 152).) Accordingly, the consent request is GRANTED.

Dated:   Brooklyn, New York
         November 24, 2021

                                                   /s/ Nicholas G. Garaufis
                                                  NICHOLAS G. GARAUFIS
                                                  United States District Judge