UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    -against-

MIRSAD KANDIC,

               Defendant.

**MEMORANDUM & ORDER**

**17-CR-449 (NGG) (RER)**

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Mirsad Kandic is charged with conspiring to provide, providing, and attempting to provide material support and resources to the Islamic State of Iraq and al-Sham ("ISIS") in violation of 18 U.S.C. § 2339B(a)(1). Kandic now moves to dismiss Count One as impermissibly duplicitous under Federal Rule of Criminal Procedure 12(b)(3)(B)(i), or, in the alternative, to strike the "death results" element. (*See* Def.'s Mot. to Dismiss (Dkt. 272).) The government opposes this motion. (*See* Gov't Opp'n (Dkt. 273).) For the reasons that follow, Kandic's motion is DENIED.

## I.  BACKGROUND

The court assumes familiarity with the underlying facts and history of this case. (*See also* Mem. & Order (Dkt. 266) at 1-4.) As relevant here, on August 17, 2017, Kandic was charged with six counts of providing material support of terrorism in violation of 18 U.S.C. § 2339B(a)(1). (*See* Indictment (Dkt. 4).) Two of those counts, One and Five, include a sentencing enhancement that increases the statutory maximum term of imprisonment from twenty years to life for an offense that results in the death of any person. (*See id.* ¶¶ 5-6, 13-14); 18 U.S.C. § 2339B(a)(1) ("[I]f the death of any person results, [the defendant] shall be imprisoned for any term of years or for life"). Count One, the lone conspiracy count, charges that from approximately January 2013 to June 2017, Kandic, together with others, conspired to provide

material support and resources, including property, services, and personnel (including himself, Jake Bilardi, and others) to ISIS, a foreign terrorist organization engaged in terrorist activity and terrorism, and the offense "resulted in the death of one or more persons, including Jake Bilardi." (Indictment ¶¶ 5-6.)

## II. DISCUSSION

### A. Timeliness

The government argues that this motion should be dismissed because it is untimely. (*See* Gov't Opp'n at 2.) "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the . . . request if the party shows good cause." *See* Fed. R. Crim. P. 12(c)(3). Kandic fails to offer good cause for his eleventh-hour motion, which presents arguments that have been readily available to him since the Indictment was returned in August 2017. And, as the government points out, the original deadline for pretrial motions lapsed in October 2019. (*See, e.g.*, Def.'s Letter Requesting Extension (Dkt. 52).) After Kandic's current counsel assumed his representation, however, the court, with the parties, discussed additional motions at a status conference on June 17, 2021. (*See* Tr. of Proceedings on June 17, 2021 (Dkt. 156) at 3:21-4:17.) The next day the court directed the parties to confer and submit a proposed joint briefing schedule "[i]f the defense plans to file an additional motion." (*See* June 18, 2021 Min. Entry.) The parties also discussed pretrial motions broadly at a status conference on November 16, 2021. (*See* Nov. 16, 2021 Min. Entry.) But the court, relying on the skill and professionalism of the parties, never subsequently set a *formal* deadline for pretrial motions. Therefore, "the deadline [to make pretrial motions] is the start of the trial," Fed. R. Crim. P. 12(c)(1), and the court will consider the merits of Kandic's motion.

### B. Material Support Statute and the "Death Results" Element

Any fact that increases the penalty for a crime beyond the prescribed statutory maximum is an element that must be submitted to a jury and proved beyond a reasonable doubt. *See Alleyne v. United States*, 570 U.S. 99, 114-15 (2013); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).[1] Therefore, "[c]alling a particular kind of fact an 'element' carries certain legal consequences" because a federal criminal jury "cannot convict unless it unanimously finds that the Government has proved each element" of the charged offense. *Richardson v. United States*, 526 U.S. 813, 817 (1999); *see also United States v. Requena*, 980 F.3d 30, 48-49 (2d Cir. 2020) (same, distinguishing between "means" and "elements" of an offense in the context of jury unanimity).

The material support statute increases the prescribed statutory maximum from twenty years to life "if the death of any person results." 18 U.S.C. § 2339B(a)(1). Because this "death results" enhancement increases the maximum sentence to which a defendant is exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt. *See Burrage v. United States*, 571 U.S. 204, 210 (2014) (analyzing a similar "death results" statute and applying a but-for causation standard). Therefore, the jury must unanimously find that the government has proved that the conspiracy to provide material support charged in Count One resulted in death.

### C. Impermissible Duplicity

The Second Circuit permits duplicitous counts so long as they are not *impermissibly* duplicitous. *See United States v. Sturdivant*, 244 F.3d 71, 75 n.3 (2d Cir. 2001); *United States v. Margiotta*, 646 F.2d 729, 733 (2d Cir. 1981) (holding that "a single count of an

---

[1] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

indictment should not be found impermissibly duplicitous whenever it contains several allegations that could have been stated as separate offenses . . . but only when the failure to do so risks unfairness to the defendant," and noting that this rule "achieves the obvious benefit of limiting the maximum penalties defendant may face if convicted of mail fraud and also avoids the unfairness of portraying the defendant to the jury as the perpetrator of [several] crimes"). "An indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be 'a separate count for each offense,' and 2) the defendant is prejudiced thereby." *Sturdivant*, 244 F.3d at 75 (quoting *United States v. Murray*, 618 F.2d 892, 896 (2d Cir. 1980)).

        1.   Prong One: Two or More Distinct Crimes

"An indictment is duplicitous if it joins two or more distinct crimes in a single count." *See United States v. Aracri,* 968 F.2d 1512, 1518 (2d Cir. 1992); *see also United States v. Upton*, 856 F. Supp. 727, 741-42 (E.D.N.Y. 1994). Count One charges that from approximately January 2013 to June 2017, Kandic, together with others, conspired to provide material support and resources, including property, services, and personnel (including himself, Jake Bilardi, and others) to ISIS, a foreign terrorist organization engaged in terrorist activity and terrorism, and the offense "resulted in the death of one or more persons, including Jake Bilardi." (Indictment ¶¶ 5-6.) The government argues that "Count One does not suffer from duplicity" because it "charges one crime," explaining that the "death results" allegation establishes "the basis for a statutory enhancement and not a separate crime." (*See* Gov't Opp'n at 3.) But, as discussed, the combined effect of *Alleyne*, *Apprendi*, and *Burrage* is clear: The death results enhancement is an element of the crime that must be submitted to the jury and proved beyond a reasonable doubt.

4

Count One thus requires only a singular death to satisfy the results in death element and complete the now enhanced offense as charged. *Cf. Burrage*, 571 U.S. at 210 & n.3. Nevertheless, the government decided to charge Count One as a conspiracy to provide material support that "resulted in the death of one or more persons, including Jake Bilardi." (Indictment ¶ 6.) Each death represents an element that could otherwise have established a distinct offense for a conspiracy to provide material support that results in death. Count One is therefore duplicitous because it joins two or more distinct crimes in a single count. The question, however, is whether Count One is *impermissibly* duplicitous. *See Sturdivant*, 244 F.3d at 75.

### 2. Prong Two: Prejudicial Duplicity

The Second Circuit has identified several relevant policy considerations to guide a court's determination of whether a defendant was actually prejudiced by a duplicitous indictment, including:

> avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in subsequent prosecutions.

*Id.* Kandic offers three such reasons for why Count One's duplicity generates actual prejudice: (1) it invites a non-unanimous verdict, (2) it creates confusion about double jeopardy, and (3) it provides inadequate notice about whose deaths the government seeks to establish. (Def.'s Mot. at 3.) But, as applied here, none of these reasons show actual prejudice.

5

### a. Unanimity

Prejudice can be avoided by "a jury instruction that ensures that the jury is unanimous as to the conduct underlying the conviction." *Sturdivant*, 244 F.3d at 80; *United States v. Dupre*, 462 F.3d 131, 143 (2d Cir. 2006) (collecting cases); *see also Abney v. United States*, 431 U.S. 651, 655, 664-65 (1977) (holding that it could not "assume that the jury disregarded the[] clear and unambiguous [unanimity] instructions"). To that end, the government agrees that the jury must be unanimous regarding which death resulted but disagrees that the law requires a special verdict form listing all possible deaths that the jury might consider. (*See* Gov't Opp'n at 1.) The government thus proposes a tailored jury charge to resolve any confusion concerning unanimity and the death results element:

> To be clear, the government need not prove that the alleged conspiracy resulted in the death of more than one person. If you find unanimously that one death resulted from the offense, then this fact would be proved. However, it is not enough to convict if some of you find that the government has proven one person's death and others of you find that the government has proven a different person's death. You must be unanimous as to the death that you are considering.

(*Id.* at 2.) This proposal would assure a unanimous verdict and eliminate any potential for prejudicial unfairness. *Cf. Dupre*, 462 F.3d at 143 ("[A]s long as the jury receives a standard instruction as to unanimity, it is not reversible error if a trial judge fails to charge the jury that it must be unanimous as to the specific act that serves as the basis for a guilty verdict.");[2] *see also Margiotta*,

---

[2] In *Dupre,* the Second Circuit observed that "it would be sound practice for a trial judge to charge a jury that it must be unanimous as to what specific transaction serves as the basis of a conviction for wire fraud, but it is not reversible error if a trial judge fails to do so and provides a standard instruction as to

646 F.2d at 733. That said, the court is mindful that a more specific instruction may be in order "where the complexity of the evidence or other factors create a genuine danger of jury confusion." *United States v. Schiff*, 801 F.2d 108, 114-15 (2d Cir. 1986). Whether this case creates a genuine danger of jury confusion has yet to be seen. Therefore, the court, with the parties, will revisit this issue during the charge conference. For now, the court finds that Kandic's concerns about a non-unanimous jury verdict are unfounded.

### b. Double Jeopardy

Kandic argues that Count One's duplicity creates a double jeopardy problem. Again, however, that concern is baseless. "Th[e] Double Jeopardy Clause protects against both multiple punishments and successive prosecutions for the same offense, regardless of whether a first prosecution resulted in conviction or acquittal." *United States v. Basciano*, 599 F.3d 184, 196 (2d Cir. 2010) (citing *Schiro v. Farley*, 510 U.S. 222, 229 (1994)). "In the case of successive prosecutions, the critical inquiry is whether the offenses are the same in fact and in law." *Id.*; *see also United States v. Olmeda*, 461 F.3d 271, 282 (2d Cir. 2006). Here, the government allows that "Count One . . . provides the defendant with a broad double jeopardy bar, as Count One covers the entire time span of the defendant's conspiracy to provide material support to ISIS, all of the forms of material support that he provided, and all of the deaths that resulted." (Gov't Opp'n at 3.) Thus, as the government makes clear, there is no danger of prejudice in connection with double jeopardy rights.

---

unanimity." 462 F.3d at 144. It further observed that "[i]t would similarly be sound practice for prosecutors to state in their summations what transfer (or transfers) they mean to rely upon." *Id.* at 144 n.14.

7

Even without the government's concession, however, there would no double jeopardy problem because "[p]rinciples of equity prohibit the government from benefitting from the prejudicial ambiguity [*i.e.*, the duplicitous indictment] that the government alone was responsible for creating." *Sturdivant*, 244 F.3d 71, 77-78. In other words, Kandic would not be "prejudiced by the duplicitous indictment because the government is estopped from acting on any interpretation of the jury's verdict that would prejudice defendant's double jeopardy rights." *Id.* at 78.

### c. Inadequate Notice

Kandic cannot rely on inadequate notice to show prejudicial duplicity. He was indicted in August 2017; defense counsel joined this matter on April 8, 2021; (*see* Not. of Attorney Appearance (Dkt. 104)); and Count One has always charged a broad conspiracy to provide material support that "resulted in the death of one or more persons, including Jake Bilardi," (Indictment ¶ 6). (*Compare id.* ¶¶ 13-14 (Count Five, charging material support that "resulted in the death of one or more persons, to wit: Jake Bilardi"). Count One is broad, it covers the entirety of Kandic's alleged offenses from approximately January 2013 through June 2017, a wide range of material support, and, on any fair reading, multiple deaths. And if the language in the Indictment was not plain enough, the government has proffered several examples of deaths (other than Jake Bilardi) in its discovery productions which would have made its position clear. (*See* Gov't Opp'n at 3.)[3]

---

[3] Moreover, the legal issues concerning the scope of the Count One conspiracy are not new in the abstract. The Supreme Court decided *Pinkerton* in 1946, and the doctrine borne of that case has occasioned no shortage of opinions, both scholarly and judicial.

For the reasons stated above, Kandic has received adequate notice as to the potential scope of Count One, and he has failed to show that such lack of notice, if it exists, has generated incurable prejudice under the applicable but-for causation standard that attaches to the death results element.

### III. CONCLUSION

For the reasons stated above, Defendant's [272] motion to dismiss Count One as impermissibly duplicitous under Rule 12(b)(3)(B)(i) is DENIED.

SO ORDERED.

Dated:   Brooklyn, New York
         May 4, 2022

                                              /s/ Nicholas G. Garaufis
                                              NICHOLAS G. GARAUFIS
                                              United States District Judge